UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-24934

CHRISTIE FANTIS, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

FLYWHEEL SPORTS, INC., a Delaware corporation,

    Defendant.

CLASS ACTION

JURY TRIAL DEMAND

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Christie Fantis by and through undersigned counsel files this Response in Opposition to Defendant Flywheel Sports, Inc.'s ("Flywheel" or "Defendant") Motion to Compel Arbitration and to Stay Proceedings and Incorporated Memorandum of Law [D.E. 12] (the "Motion") and, in support thereof, states as follows:

**I.    INTRODUCTION**

Flywheel's Motion is a desperate attempt to evade litigating Plaintiff's claims for violations of the Telephone Consumer Protection Act ("TCPA"). Despite never providing its Terms of Service (the "TOS") to Plaintiff, identifying where she could obtain a copy of the TOS, or otherwise making the TOS available to Plaintiff, Flywheel still attempts to rely on an arbitration agreement in the TOS's. Defendant's motion is legally defective, logically flawed, and should be rejected.

Plaintiff signed up for her Flywheel class using ClassPass, a third-party gym services

aggregator. As a part of this registration process, Plaintiff was allegedly[1] required to accept ClassPass's Terms of Use, which did not mention Flywheel by name, the TOS, or Flywheel's arbitration provision. Because Defendant did not otherwise make its TOS available to Plaintiff, it attempts to rely on the following vague language buried at the very end of ClassPass's Terms of Use as a basis for compelling arbitration:

> "Your Participation in any Class or service *may be* subject to addition[al] policies, rules or conditions of the applicable Venue and you understand and agree that you may not be permitted to reserve or attend classes or services if you do not comply with these Terms or the policies of the Venues."

*See* [DE 12 at pg 49] (emphasis added).

As such, Defendant's theory for compelling arbitration is based on the idea that when third-party ClassPass told Plaintiff that she "may be" subject to additional "policies, rules or conditions" of unknown and unnamed third-parties, she was really entering into binding contracts with thousands of third-parties, including Flywheel. In other words, Defendant's theory holds that all new ClassPass consumers immediately enter into binding contracts with one million different workout studios in "80+ cities,"[2] regardless of whether a consumer is given the ability to actually review (or even become aware of the existence of) the policies of these third-party studios—a clearly absurd result.

Luckily for Plaintiff and other ClassPass consumers, Defendant's theory is legally flawed and routinely rejected by Courts in this district and elsewhere. Flywheel's TOS, which included the subject arbitration provision, were not sufficiently incorporated by reference in ClassPass's Terms of Service, as there is no express indication of the parties' intention to be bound by Flywheel's TOS. Additionally,

---

[1] Defendant failed to provide any evidence or sworn testimony demonstrating that Plaintiff consented to ClassPass's terms and conditions.
[2] *See* www.classpass.com (Last accessed January 31, 2019) ("use your membership in 80+ cities" and "choose from a million workout classes").

ClassPass's Terms of Use also fail to sufficiently describe Flywheel's arbitration provision.[3]

Accordingly, Flywheel's Motion must be denied for several reasons. First, Plaintiff never agreed to be bound by Flywheel's TOS. Second, Plaintiff never saw or agreed to Flywheel's TOS because Flywheel never actually or constructively notified Plaintiff that her use of the ClassPass application would subject her to the TOS. Finally, even assuming the Court finds that Plaintiff entered into an arbitration agreement with Defendant, the Motion should be denied because Plaintiff's claims are outside the scope of the subject arbitration agreement.

As such, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff registered for a Flywheel class through ClassPass—not through Facebook or with Flywheel directly.[4] It is undisputed that Plaintiff did not create an account directly with Flywheel at any point prior to the beginning of this ligation. Fantis Decl. at Ex. A, ¶ 2, 3, 9-11.[5] Indeed, Defendant conceded any dispute of this fact in its Motion: "The records for this account show that ***this user signed up for a Flywheel class through the ClassPass website*** on or around that date, November 22, 2017." Def.'s Mot., Ex. 1 at ¶ 7 (emphasis added).

Further, it is also a matter of undisputed fact that, during her registration through the ClassPass application, Plaintiff was never presented with Flywheel's terms and conditions. *Id.* at

---

[3] What's even more striking is the uncontested fact that Flywheel's TOS were never hyperlinked or made viewable to Plaintiff at any point during her ClassPass registration.

[4] Because it is undisputed that Plaintiff did not use Flywheel's website or Facebook to register, any discussion by Defendant in its Motion about such processes is irrelevant to the Court's analysis of whether Plaintiff agreed to arbitrate her TCPA claims against Defendant.

[5] The Declaration of Christie Fantis, dated January 30, 2019, is attached hereto as Exhibit A.

3

Ex. A, ¶ 3. As Flywheel implicitly concedes, because Plaintiff registered through ClassPass, Flywheel's Terms of Service—and most importantly, its purported arbitration provision—were never provided or made available to Plaintiff directly, through a hyperlink, or by some other means. Further, Plaintiff never visited the Flywheel website or participated in the sign-up process identified in Paragraph 4 of the Declaration of Jonathan Williams (attached to Defendant's Motion as Exhibit 1). *Id.* at Ex. A, ¶ 10. As such, Plaintiff was unaware and had no reason to believe that she agreed to Flywheel's TOS, including the subject arbitration provision. *Id.* at Ex. A, ¶ 4.

Then, on November 21, 2018 and November 2018, respectively, after Plaintiff completed her registration through ClassPass, Flywheel sent the following violative marketing text messages to Plaintiff's cellular phone:



Pltf.'s Comp., ¶ 23.

### III. ARGUMENT

#### A. Legal Standard.

When reviewing a motion to compel arbitration, the court must consider three primary

4

factors: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue existed d; and (3) whether the right to arbitrate was waived. *See, e.g.*, *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004).

A valid agreement to arbitrate exists when "the parties agreed to arbitrate" and "the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation marks and citations omitted). The Federal Arbitration Association's "pro-arbitration policy *only* applies to disputes that the parties have agreed to arbitrate.'" *Mims v. Global Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1353 (S.D. Fla. 2011) (quoting *Becker v. Davis*, 491 F.3d 1292, 1298 (11th Cir. 2007) (emphasis added).

"In other words, arbitration of a dispute should only be ordered where the court is satisfied that neither the formation of the parties' arbitration agreement nor its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement." *Solymar Inv., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847, 2855 (2010).

**B.   Plaintiff was not given actual or constructive notice of Flywheel's alleged arbitration provision and thus never agreed to be bound by its terms.**

Plaintiff registered for a Flywheel class using a third-party gym services aggregator, ClassPass. Flywheel's Terms of Service are not referenced in ClassPass's Terms of Use or made available by ClassPass during the registration process. Thus, it was impossible for Plaintiff to make an informed decision about Flywheel's Terms of Service (if she actually knew they existed) because she was never offered the ability to do so. To this end, Flywheel, either directly or through ClassPass, did not provide Plaintiff actual or constructive notice that her participation was conditioned on her consenting to Flywheel's terms and conditions, and, as a result, Plaintiff was not on notice of any precondition of arbitration.

5

Because Plaintiff contends that she never consented to the arbitration provision in Flywheel's terms and conditions when he signed up through ClassPass, there is "no 'clear and unmistakable evidence' that the Parties agreed to arbitrate any dispute" or "the arbitrability of such a dispute." *See Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 181173, at *8 (M.D. Fla. Aug. 26, 2016) (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). The Court must therefore determine the arbitrability of Plaintiff's TCPA claims against Flywheel. *Id.* at *8-9.

In doing so, the Court applies the "state law contract principles" of the state in which the agreement at issue was allegedly executed. *Id.* at *9-10. Here, there is no dispute that Florida law applies and it is Flywheel's "burden of establishing an enforceable written agreement to arbitrate." *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 639 (Fla. 5th DCA 2017).

Under Florida law, since Plaintiff did not have actual notice of Flywheel's TOS, Flywheel was required to explain to Plaintiff that Flywheel intended for Plaintiff "to be bound by" its terms and conditions during the actual sign-up process. *See Temple Emanu-El v. Tremarco Indus., Inc.*, 705 So. 2d 983, 984 (Fla. 4th DCA 1998). The doctrine of incorporation by reference "requires that there must be some expression in the incorporating document … of an intention to be bound by the collateral document. A mere reference to another document is not sufficient to incorporate that other document into a contract, particularly where the incorporating document makes no reference that it is 'subject to' the collateral document." *Kantner v. Boutin*, 624 So. 2d 779, 781 (Fla. 4th DCA 1993); *cf. Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631-32 (Fla. 1st DCA 1999) (holding that a contract "need not state that it is 'subject to' the provisions of the collateral document to incorporate its terms," but "must contain more than a mere reference to the collateral document").

Moreover, "[w]hen a contract refers to another document, it must not only refer to the

6

document, but it must also sufficiently describe the document." *Affinity Internet, Inc.*, 920 So. 2d at 1288-89. Florida courts regularly refuse to compel arbitration based on arbitrations provisions in agreements that are not sufficiently incorporated by reference because they either: (1) fail to expressly indicate the parties' intention to be bound by the document containing the arbitration provision or (2) fail to sufficiently describe it. Here, Flywheel's arbitration provision is neither referenced nor sufficiently described during the ClassPass registration process, and therefore cannot be enforced.

By way of example, in *Temple Emanu-El*, the court refused to compel arbitration based on an arbitration provision embedded in a warranty where the only reference to the warranty in the parties' other agreement stated "11.) Provide Firestone 12 year performance warranty." *Temple Emanu-El*, 705 So. 2d at 983-84 (The "contract does not even state" that it "is 'subject to' the Firestone warranty."); *see Affinity Internet*, 920 So. at 1288-89 (affirming court's refusal to compel arbitration because "the contract contain[ed] no clear language evidencing an intention of the parties to incorporate the terms of the collateral document" and holding that "the issue of whether a valid arbitration agreement existed was a matter of law."); *see also, e.g.*, *Herman*, 2016 U.S. Dist. LEXIS 181173, at *13-14 (holding that a "reasonably prudent user" would not have had inquiry notice of website terms and conditions containing an arbitration agreement, and denying the defendant's motion to compel arbitration);[6] *Vitacost.com, Inc. v. Mccants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) (recognizing that "agreements have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice.").

Here, as in *Temple Emanu-El*, there is no explicit reference to Flywheel's TOS in ClassPass's

---

[6] After applying the reasonably prudent person standard to deny defendant's motion to compel arbitration, the *Herman* court ultimately granted class certification. *Herman v. SeaWorld Parks & Entm't, Inc.*, 320 F.R.D. 271 (M.D. Fla. 2017).

Terms of Use, which did not indicate—let alone conspicuously alert Plaintiff—that registering through ClassPass's application would subject her to binding arbitration for TCPA claims against Flywheel. What's more, there is no evidence on the record that Plaintiff ever intended to be bound by such conditions, simply because no such evidence exists. Indeed, Plaintiff never viewed, nor was presented with the opportunity to view, Flywheel's TOS upon registration through ClassPass. Defendant does not, and cannot, dispute this fact. Fantis Decl. at Ex. A, ¶ 3-6.

Likewise, in *Gustavsson v. Washington Mutual Bank, F.A.*, the court concluded that the parties' signed agreement "neither identifie[d] or describe[d], nor in any way expresse[d] an intention that [the plaintiff] should be bound by a twice removed collateral document referring to arbitration." 850 So. 2d 570 (Fla. 4th DCA 2003). Although the parties' agreement "expressly referred to a place to find additional terms ['reverse side']" it did not, among other things, "describe the type of terms or conditions that [the plaintiff] may find" or "even describe another document, at all." *Id.* at 574. The situation here is even more egregious because there is no reference to Flywheel's arbitration provision by ClassPass at all. And, the plaintiff "did not sign any document containing language that he acknowledged receipt of any other documents." *Id.*; *see Herman*, 2016 U.S. Dist. LEXIS 181173, at *16 ("'where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on— without more—is insufficient to give rise to constructive notice'"); *cf. Avatar Props., Inc. v. Greetham*, 27 So. 3d 764, 766 (Fla. 3d DCA 2010) ("It is undisputed that the Greethams not only signed the purchase and sale agreement, but that they initialed the provision that incorporated the home warranty by reference.").

As in *Gustavsson*, Plaintiff here did not sign any document containing language that she

acknowledged receipt of Flywheel's TOS, or otherwise take any affirmative action to demonstrate assent to Flywheel's arbitration provision. Therefore, the Court should find that Plaintiff, a reasonably prudent person, did not have constructive or actual notice from Flywheel during the ClassPass sign-up process that she was required to consent to Flywheel's arbitration agreement in order to utilize in ClassPass.

The cases cited by Defendant do not compel a different outcome, and, in fact, support Plaintiff. In *Greenberg v. Doctors Associates, Inc.*, a case heavily relied on by Defendant, the plaintiff was directed to the exact location of the subject contract and presented with the opportunity to inspect the contract. 2018 U.S. Dist. LEXIS 177276, at *3 (S.D. Fla. Aug. 29, 2018) ("Plaintiff also admits that the Subway offer contained a "disclaimer" stating that Terms and Conditions "would be found at subway.com/subwayroot/TermsOfUse.aspx ."). Here, unlike in *Greenberg¸* the contract Defendant relies on was never provided to Plaintiff nor was Plaintiff pointed to a location where the contract could be found. In fact, the opposite is true. The agreement Plaintiff allegedly was shown by ClassPass states that she "*may* be subject to addition[al] policies, rules or conditions" by an unknown number of unnamed third party's. [DE 12 at pg 49].

Likewise, Defendant's reliance on *Temple v. Best Rate Holdings LLC*, No. 8:18-CV-176-T-36JSS, 2018 WL 6829833, at *9 (M.D. Fla. Dec. 27, 2018), is misplaced. In *Temple* the plaintiff was able to click and/or read conspicuously hyperlinked terms and conditions that contained an arbitration provision. Again, here, Plaintiff was vaguely told that "additional policies, rules, or conditions" *may* be placed on her by unnamed third-parties.

Ultimately, as a matter of Florida law, Flywheel's TOS (which included its arbitration provision) were not effectively incorporated by reference in ClassPass's terms and conditions or at any point during Plaintiff's registration process. Because Plaintiff did not have actual notice of the terms

and conditions, she is not bound by the arbitration agreement they contain. The Court should therefore deny Flywheel's motion to compel arbitration.

### C. Plaintiff's Claims are Outside the Scope of the Arbitration Agreement.

Even if the Court finds that Plaintiff agreed to Defendant's TOS (she did not), Plaintiff's claims fall outside the arbitration provision because the present action has no connection to Plaintiff's relationship, or lack thereof, with Defendant. The violative messages sent by Defendant are in no way related to her single prior workout at Flywheel. In other words, Plaintiff's claims fall outside the scope of the purported arbitration agreement. Plaintiff's claims encompass conduct by Defendant that involves an entirely separate violation of a federal law that is not contemplated by the TOS, the only agreement that contains an arbitration provision. Binding all future wrongdoing by Defendant to arbitration because the parties had an agreement is an unfair and unreasonable interpretation of the contract and wrongly deprives Plaintiff and others similarly situated of their rights. Plaintiff's claim is that Defendant violated the TCPA. There is no connection between Plaintiff's claim and the TOS, which do not reference or discuss the TCPA.

This case is nearly identical to *Gamble v. New Eng. Auto Fin., Inc.*, 2018 U.S. App. LEXIS 14608 (11th Cir. 2018), where the Eleventh Circuit held that an arbitration provision in a loan agreement did not encompass the plaintiff's TCPA claim and, therefore, denied arbitration. In *Gamble*, the plaintiff entered into an auto loan agreement with the defendant, which required arbitration of "any claim, dispute, or controversy . . . whether preexisting, present or future, that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement." *Id*. After the plaintiff satisfied the loan and the agreement terminated, she began receiving text messages from the defendant offering her a new loan. *Id*. at *2.

In moving to compel arbitration, the defendant claimed that the arbitration clause covered

10

the plaintiff's TCPA claim because the claim "touched matters" relevant to the loan agreement.

The Eleventh Circuit disagreed, holding in pertinent part as follows:

> The plain language of the Arbitration Provision requires that the dispute "arise[] from or relate[] to this Agreement or the Motor Vehicle securing this Agreement." Although this language makes the arbitration provision broad, it does not make it limitless….Here, Ms. Gamble signed an agreement whereby NEAF promised to provide her with the necessary funds to purchase an automobile on a particular date, in exchange for her promise to pay NEAF back—with interest—by a later date. The Arbitration Provision only applies to disputes arising out of, or related to, this agreement.

*Id.* at *6 (alterations in original).

The Eleventh Circuit further held that the claim arose from a "separate, distinct federal law" rather than arising from the parties' loan agreement. *Id.* at *7 (citing *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F. 3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause.")).

Here, Plaintiff's claims arise from the same separate and distinct federal law that is wholly unrelated to the "Flywheel Policies." Def.'s Mot. at 3. Like the loan agreement in *Gamble*, the arbitration clause at issue here limits its scope to disputes arising from Flywheel Policies, which do not reference or discuss the TCPA. Thus, the arbitration clause here is equally as narrow in scope as that in *Gamble*.

Consistently, other courts have held that issues which are not related to the scope of the parties' agreement are not subject to the agreement's arbitration clause. *See Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337 (N.D. Ga. 2016) (holding that the plaintiff's TCPA claim does not fall within the scope of the parties' arbitration agreement because DirecTV's calls were for "advertising, marketing, or other purposes" soliciting plaintiff to enter into a new account); *Porter v. Dollar Fin. Group, Inc.*, 2:14-1638 WBS AC, 2014 WL 4368892, at *3 (E.D. Cal. 2014)

11

(denying defendant's motion to compel arbitration where plaintiff alleged she received calls in violation of the TCPA that were not related to the contract containing the arbitration provision, because the arbitration agreement did not "encompass[ ] the dispute at issue"); *Wagner v. Discover Bank*, 12 CV-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. 2014) (denying defendant's motion to compel arbitration, holding plaintiff's TCPA claims "relate to matters beyond the scope of the parties' arbitration agreement").

Like in *Gamble*, Plaintiff's claims here arise not from the Flywheel Policies "or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law," *See Gamble*, 735 F. App'x 664, 666 (11th Cir. 2018). Defendant's motion to compel should therefore be denied.

## IV.     CONCLUSION

Accordingly, Plaintiff did have actual or constructive notice that using the ClassPass application was conditioned on her agreement to Flywheel's terms and conditions containing an arbitration provision. Further, even assuming the arbitration provision is binding, Plaintiff is not required to arbitrate her TCPA claims. The Court should therefore deny Flywheel's Motion in its entirety.

Dated:  January 31, 2019

Respectfully submitted,

By: */s/ Scott Edelsberg*
**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Jordan D. Utanski, Esq.
Florida Bar No. 119432
utanski@edelsberglaw.com
2875 NE 191st St #703
Aventura, FL 33180
Telephone: 305-975-3320

Andrew J. Shamis  
Florida Bar # 101754  
**SHAMIS & GENTILE, P.A.**  
14 NE 1st Ave., Suite 1205  
Miami, FL 33132  
Telephone (305) 479-2299  
Facsimile (786) 623-0915  
Email: efilings@shamisgentile.com
